CABASSA, PLAINTIFF AND APPELLANT, *v.* BRAVO, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Mayagüez in an Action Concerning the Exercise of Patria Potestas.

No. 1997.—Decided December 16, 1919.

DIVORCE—PATRIA POTESTAS—CORRUPTING EXAMPLES.—The fact that after being divorced the wife entrusted with the *patria potestas* of the children contracted a second marriage with a first cousin before 301 days had elapsed since the divorce, and also the fact that a short time after this second marriage was annulled she contracted a third marriage with a colored man whose social

position was inferior to hers, cannot be considered as causes sufficient in law, under section 236 of the Civil Code, to deprive her of the exercise of the patria potestas.

ID.—ID.—ID,—The corrupting examples to which section 236 of the Civil Code refers are such as the parents may give their children by their actual licentious conduct or by actual acts of recognized immorality.

The facts are stated in the opinion.

*Mr. A. F. Castro* for the appellant.

*Mr. A. Nazario Lugo* for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

In an action for divorce by Rosaura Cabassa y Hernández against her husband, Alfredo Bravo y González, the District Court of Mayagüez entered judgment on March 27, 1914, which became final on July 18 of the same year, sustaining the complaint of the plaintiff, dismissing the counter-complaint filed by the defendant and ordering, in accordance with section 175 of the Civil Code, that the minor children of the two spouses should be placed under the care and *patria potestas* of the mother.

There were six children, named Santos Josefina, Carlos Alfredo, Santos, Leopoldo Guillermo, Elva and Rosaura, and all of them except the one named Elva, who lives with the mother, were in the custody of the father.

In the said suit for divorce the defendant, Alfredo Bravo, filed a motion in the year 1918 for an order depriving the plaintiff, Rosaura Cabassa, of the *patria potestas* of her said minor children and conferring the same upon the father. In support of his motion defendant Bravo alleged that almost immediately after the divorce was granted, Rosaura Cabassa, instead of fulfilling the obligations imposed upon her by the *patria potestas* of her minor children, had amorous relations with Ricardo Nadal y Cabassa, her first cousin, with whom she contracted marriage in the Dutch colony of Curacao; that the said marriage was declared null and void by a final judgment of October 29, 1918, not only for lack of a previous dispensation of relationship, but also

because it was contracted before the expiration of the 301 days which the Civil Code fixes as the time after which a divorced wife may again contract marriage; that also after the annulment of her second marriage the plaintiff failed to comply with the obligations that the law imposes upon her with regard to her minor children, and contracted another marriage with a colored man who belongs, therefore, to a social class different from hers and that of her minor children; that during the whole time since the divorce was granted the plaintiff paid no attention to her minor children, who were and are still under the sole custody and care of their father, who has always provided for all of their necessities, attending to their education, maintenance and clothing, without any attempt on the part of the mother to cultivate the love of or to maintain relations with her children, to whom she has not written a single letter since the separation; that in the will of Leopoldo Cabassa, the maternal grandfather of the minors, these were designated as legatees in the sum of $2,000 each for the expenses of their education and support, Jacobo Cabassa y Hernández, son of the testator, having been appointed as their guardian for the administration of the said legacies; that the plaintiff has made no attempt to obtain from the guardian the delivery of the usufruct of the said legacies which, under good management, should have produced a monthly income of $100 which would have paid the necessary living expenses of the minors.

Plaintiff Rosaura Cabassa opposed the said motion, alleging that the procedure followed by the defendant was not adequate to deprive the plaintiff of the *patria potestas* of her minor children, but that the defendant should have brought the corresponding ordinary action, and that in any event the causes alleged in the motion are not among those recognized by the code as sufficient for depriving her of the exercise of the *patria potestas*.

The plaintiff also filed another motion asking the court that in compliance with and in execution of the provision of

the decree of divorce that the children of the marriage should remain under her custody and *patria potestas,* the defendant be ordered to deliver them to her.

Both motions were heard at the same time and both parties introduced evidence, whereupon the court disposed of them by an order of January 9, 1919, which substantially reads as follows:

"The court, after hearing the evidence and the arguments of the attorneys present, reserved its decision for to-day, January 9, 1919, and on this day it rules as follows:

"From the evidence it appears that since the divorce was granted on March 27, 1914, and prior to that date the said children named Santos Josefina, Carlos Alfredo, Santos, Leopoldo Guillermo and Rosaura have lived with their father, the defendant, who has provided for them in the manner corresponding to the high social position of the family, providing everything necessary for their maintenance, clothing, medical attendance and education; that during all that time the mother of said minors, the plaintiff, has paid no attention to them, nor has she even once attempted to see the said minors, and now, shortly after their grandfather, Leopoldo Cabassa, died leaving in his will a legacy to be used for their education, comes the mother and for the first time shows an interest in having the said children with her.

"The plaintiff has been married twice since the divorce was granted—first in Curacao to her first cousin, which marriage was annulled, and afterwards in the city of New York to a man whom the eldest daughter of the plaintiff, Josefina, has testified to be of an inferior race, and that testimony has not been refuted in any manner.

"The children Josefina, Alfredo and Santos testified at the hearing on these motions that they preferred to continue living with their father; that the mother had absolutely abandoned them and could feel no love for them, and that they were happy in their present life.

"From these facts the court arrives at the conclusion, considering, as it must in a case of this kind, only the welfare of the minors, that they should remain in the custody of their father, the defendant, who shall devote the income produced by the legacy left to the minors by their grandfather to their education.

"Therefore, the court overrules the motion of the plaintiff and

adjudges and orders that the minors Santos Josefina, Carlos Alfredo, Santos, Leopoldo Guillermo and Rosaura Bravo y Cabassa shall remain under the custody and care of their father, defendant Alfredo Bravo y González, who shall devote the income of the legacy left to them by their grandfather, Leopoldo Cabassa, to the purposes to which the testator wished it to be devoted.''

That decision has been appealed from by the plaintiff, Rosaura Cabassa, and her attorney alleges the following grounds in support of the appeal: 1st, that the court erred in considering valid and efficient the procedure followed by the defendant to deprive the plaintiff of the exercise of the *patria potestas;* 2nd, that the court erred in depriving the plaintiff of the *patria potestas* of her minor children and conferring the same upon the defendant, entrusting him with the custody of the minors and the management of their property.

The motion of Alfredo Bravo being considered alone, we are of the opinion that the legal question of the deprivation of the *patria potestas* must be raised and decided in an ordinary action and not on a mere motion.

Scaevola, commenting on Section 171 of the Spanish Civil Code, which with a slight difference is the same as section 236 of the revised Civil Code, says:

''But if, as is most probable, the father or the mother object, as there arises a controversy between known and definite parties, the matter will have an adversary nature and will have to be considered in an ordinary action, inasmuch as it involves the loss or extinction of rights of such importance as are those inherent to the *patria potestas.*'' 3 Scaevola, 367.

The illustrious commentator Manresa is of the same opinion:

''If it is necessary to follow the civil procedure, these matters must be considered in an ordinary action, as they refer to rights which involve the status of persons.'' 2 Manresa, 62.

And such has been the practice followed by the insular

courts since the adoption of the present Code of Civil Procedure. *LeHardy* v. *Acosta*, 18 P. R. R. 438, and *Arbona* v. *Torres*, 24 P. R. R. 423.

But taking into account that the judgment entered in a suit for divorce brought by Rosaura Cabassa against Alfredo Bravo ordered that the minor children of the two spouses should remain under the care and *patria potestas* of the mother; that in that same suit Bravo filed the motion to deprive Rosaura Cabassa of the *patria potestas* conferred upon her; that in the same suit Rosaura Cabassa filed another motion asking that the decree of divorce be executed; that the two motions were heard together and both parties introduced evidence in support of their respective allegations, Bravo's motion becoming in a manner an opposition to the motion of Rosaura Cabassa, we will pass on to the second ground of the appeal. Section 175 of the Civil Code provides that in all cases of divorce the minor children shall be placed under the *patria potestas* of the party who has obtained the decree; but the other spouse shall have the right to continue family relations with his or her children. And section 234 provides that the father or the mother loses the *patria potestas* over his or her children, when, in a suit for divorce, a final decree awards the custody of the children to one or the other party.

By virtue of the judgment of the District Court of Mayagüez in the action for divorce by Rosaura Cabassa against Alfredo Bravo the minor children of the two spouses were to remain under the care and *patria potestas* of the mother, the father losing it from that time.

It is true that said section 175 cannot be understood as conferring upon the innocent spouse the immediate right, without conditions or reservations, to the physical custody of the minor children, but the conditions and reservations can not be arbitrary and must be such as are determined by the statutes.

Section 236 of the Civil Code clearly determines the con-

ditions and limitations under which a father or mother may
be deprived of the *patria potestas* of the children, or the
exercise thereof may be suspended. It reads as follows:

"Sec. 236.—The courts may deprive parents of the *patria potes-
tas* or suspend the exercise thereof, if they treat their children with
excessive harshness, or give them commands, advice or examples of
a corruptive nature, and shall name a tutor, in accordance with law,
for the persons of the said children. *   *   *"

The maxim *expresio unius est exclusio alterius* is appli-
cable to that statute.

We find no evidence in the record referring to excessively
harsh treatment, or corrupting commands, advice or ex-
amples that would justify depriving the mother of the *patria
potestas*. Her second marriage, which was annulled, and her
third marriage with a colored man whose social position was
inferior to hers and that of her children, cannot be considered
as legal causes under section 236 for the deprivation or sus-
pension of the *patria potestas*.

It is true that the welfare of the children should be care-
fully guarded by the courts; but they should remember that
the law was enacted also with this end in view. 21 Cyc., 331,
332 and 333; *In re Gates,* 95 Cal., 461.

We so said in the case of *LeHardy* v. *Acosta,* 18 P. R. R.
438, adding then and repeating now:

"And, while the courts are in the line of duty in exercising the
utmost vigilance in protecting children in all their rights and from
suffering any injury whatever, yet this care should be exerted here
in the manner pointed out by our code; and it is the duty of the
courts, in this as in all other cases, to track the law. As the trial
court, with the very best intentions no doubt, has failed to observe
the requirements of the statutes in rendering the judgment appealed
from, we must not allow the decision thus made to stand. The father
should have the absolute control and custody of his minor children,
unless some excellent legal reason to the contrary is alleged and
proved."

It does not matter that the children Josefina, Alfredo and

Santos testified at the hearing on the motions that they preferred to continue living with their father; that the mother had absolutely abandoned them; that she could feel no love for them, and that they were happy in their present life.

Although Alfredo Bravo was divorced from Rosaura Cabassa and had lost the *patria potestas* of his minor children, he continued to be their father and in caring for them as he did because the mother did not, he complied with the duties of a father, but the fact that the mother took no care of them is not a sufficient reason for taking the *patria potestas* from her and conferring it upon Bravo. Rosaura Cabassa is entitled to the custody of her children and this right is recognized in her by law and by the judgment of a court. Bravo has lost that right and the mere preference of the children will not as a rule be allowed to prevail over such a right. 29 Cyc. 1596.

There is not the least indication that Rosaura Cabassa may give corrupting examples to her children in the home founded by her and her present husband, whatever may have been her former conduct; therefore there is at present no sufficient cause for depriving her of the *patria potestas* conferred upon her by law, for, according to a judgment of the Supreme Court of Spain of November 9, 1898, the corrupting examples to which section 171 of the Spanish Civil Code, equivalent to section 236 of the revised code, refers, are such as the parents may give to their children by actual licentious conduct or by acts of recognized immorality.

Although Rosaura Cabassa failed to comply with the obligations of a mother who is solicitous for the welfare of her children, she now appears to be disposed to comply with such duties and the courts are under the obligation to place her in a position where she may do so, giving her the custody of her minor children, but without interrupting the family relations between the father and the children.

The order appealed from must be

*Reversed*

Justices del Toro and Aldrey concurred.

Mr. Justice Wolf concurred in the judgment.

Mr. Justice Hutchison took no part in the decision of this case.